UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DAWN M. UBILES, | 15-CV-895-RJA-MJR |
| | REPORT AND RECOMMENDATION |
| Plaintiff, | |
| -v- | |
| NANCY A. BERRYHILL,[1] | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

_____

This case has been referred to the undersigned by the Hon. Richard J. Arcara pursuant to 28 U.S.C. §636(b)(1)(B) for the preparation of a report and recommendation on dispositive motions. (Dkt. No. 19).

Plaintiff Dawn M. Ubiles brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that Ubiles' motion (Dkt. No. 18) be granted, the Commissioner's motion (Dkt. No. 27) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted for the previously named defendant Carolyn Colvin. The Clerk of Court is directed to amend the caption accordingly.

## BACKGROUND

I.  *Procedural History*

On June 5, 2012, Ubiles filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") alleging disability since April 13, 2007 due to migraines, herniated and bulging discs, neuropathy in her right leg, a prior blood clot in her right leg, cellulitis in her right leg, and a pacemaker. (*See* Tr. 69-70, 124-34, 147).[2] Ubiles, a certified nursing assistant (Tr. 54), injured herself at work on April 13, 2007 when a patient fell on her (Tr. 33). She has not worked since that time. (Tr. 34-35). Ubiles' applications were denied on December 21, 2012 (Tr. 69-76), after which she requested a hearing before an Administrative Law Judge (Tr. 79-80). On March 31, 2014, Ubiles, represented by counsel, appeared before Administrative Law Judge Donald T. McDougall (the "ALJ") for a hearing. (Tr. 29-62). On May 13, 2014, the ALJ issued his decision denying Ubiles' DIB and SSI claims. (Tr. 14-28). Ubiles requested review by the Appeals Council (Tr. 12), but on August 28, 2015, the Appeals Council denied Ubiles' request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

II.  *Summary of the Evidence*

   A. *Medical Evidence*

The Court will briefly summarize the medical evidence that is relevant to its findings and recommendations.

On April 13, 2007, Ubiles suffered injuries at work when a patient fell on her. (Tr. 264). After the accident, Ubiles treated with Dr. David Bagnall for neck and back pain

---

[2]  References to "Tr." are to the administrative record in this case.

radiating down her right leg. (Tr. 253-66). At a June 4, 2007 appointment, Dr. Bagnall concluded that Ubiles' symptoms are related to her work injury, and he assessed a "[t]emporary partial moderate" disability. (Tr. 264-66). At a September 21, 2007 appointment, Dr. Bagnall noted that Ubiles "is not totally disabled" and can "get back to some sort of employment." (Tr. 259-61).

On January 25, 2008, Dr. Daniel Carr examined Ubiles in connection with her workers' compensation claim. Dr. Carr opined that Ubiles can return to work in a light-duty capacity so long as she can frequently change positions, not lift more than thirty pounds, and not engage in repetitive bending at the waist. (Tr. 246-51).

On December 11, 2009, chiropractor Gary Kostek examined Ubiles in connection with her workers' compensation claim. Dr. Kostek opined that Ubiles has a "moderate degree of disability" and is capable of light-duty work. According to Dr. Kostek, Ubiles should not lift more than twenty-five pounds nor repetitively bend, lift, or twist, should change positions on a regular basis, and should work four or less hours a day for four months to help her transition to an eight-hour workday. (Tr. 232-35).

On July 7, 2010, Dr. Edwin Mohler examined Ubiles in connection with her workers' compensation claim and found that she has a "mild, partial and temporary" disability. Dr. Mohler opined that although Ubiles can work, she is restricted from repetitive bending, lifting from the floor, running, and lifting more than thirty pounds on occasion. Dr. Mohler added that Ubiles is capable of clerical work, identifying the needs of patients, procuring light equipment, giving out medications and snacks, and assisting with feeding and hygiene. (Tr. 227-31).

On July 12, 2012, Dr. Christopher Grammar examined Ubiles in connection with her workers' compensation claim and found a "disconnect" between her symptoms and the diagnoses she received from her treating physicians. Dr. Grammar diagnosed "lumbar sprain/strain superimposed upon degenerative lumbar disc disease." He did not recommend any further treatment. (Tr. 224-26).

Between 2009 and 2013, Dr. Andrew Matteliano, a pain management specialist, treated Ubiles approximately every thirty to sixty days. (Tr. 273-306, 391-433). From March 2009 until November 2011, Dr. Matteliano opined that Ubiles has a "moderate to marked partial permanent disability." However, at a November 23, 2011 appointment, Dr. Matteliano remarked that Ubiles "is not doing well," and he ordered a lower extremity electrodiagnostic study, which was performed on December 5, 2011. (Tr. 284-85, 288-89). On January 23, 2012, Ubiles returned to Dr. Matteliano, who remarked that the electrodiagnostic study showed right L5 and S1 radiculopathy. (Tr. 282-83). As a result, Dr. Matteliano changed his disability assessment from "moderate to marked partial permanent disability" to "total temporary" disability (Tr. 280-83), and he continued to assess a "total temporary disability from all work" at each appointment through 2013.

Dr. Matteliano's treatment notes indicate that Ubiles uses a cane. In particular, at a March 8, 2012 appointment, Dr. Matteliano noted that Ubiles uses an "assistive device for ambulation." (Tr. 279). At a July 2, 2012 appointment, Dr. Matteliano remarked that Ubiles uses a cane for both ambulation and stability. (Tr. 274-75). At appointments in August 2012, January 2013, and March 2013, Dr. Matteliano directed Ubiles to use her cane for ambulation. (Tr. 420-21, 426-27, 432-33).

Ubiles did not undergo a consultative physical examination in connection with her disability applications.

B. *Administrative Hearing Testimony*

Born in 1965, Ubiles was forty-eight-years old at the time of the hearing. (Tr. 33). She has a high school diploma, attended college for two years, and received certificates for EKG testing and performing kidney dialysis. (Tr. 33, 47-49, 148).

Ubiles testified that her symptoms include back pain, swelling in her legs, shooting pain in her right leg, and daily headaches. (Tr. 41-43, 50). After her injury, she received injections, chiropractic treatment, physical therapy, and treatment from a pain management doctor. She lives alone and spends three-quarters of her day in a recliner with her legs elevated. (Tr. 49, 52-53). She sleeps in her recliner because she cannot get comfortable in bed. (Tr. 56). She can lift five pounds, stand for ten minutes on a good day, sit for about thirty minutes in a regular chair, and walk about fifteen to twenty yards with the help of a cane. (Tr. 49-52). Dr. Matteliano prescribed the cane. (Tr. 55). She uses a back rest when she drives, but she does not drive often. (*Id.*). Ubiles testified that she receives workers' compensation benefits for medication and treatment, but her income benefits were terminated because she is not actively looking for work. (Tr. 38-40).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful

activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past

relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Ubiles has not engaged in substantial gainful activity since April 13, 2007, her alleged onset date. (Tr. 19).[3] At step two, the ALJ concluded that Ubiles has the following severe impairments: "degenerative disc disease in the lumbar spine, radiculopathy in the right leg and migraines." (*Id.*). At step three, the ALJ found that Ubiles does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20). Before proceeding to step four, the ALJ assessed Ubiles' RFC as follows:

---

[3] In addition, with regard to Ubiles' DIB claim, the ALJ found Ubiles' date last insured to be June 30, 2013. (Tr. 19).

> [T]he claimant has the residual functional capacity to perform light work as defined in [20 C.F.R. §§404.1567(b) and 416.967(b)][4] except [she] should avoid extreme exposure to fumes, dusts, gases, and other respiratory irritants, must be able to change positions at least every half hour for a minute or two, no climbing of ladders, ropes and scaffolds, no more than occasional climbing of ramps and stairs, no more than occasional kneeling, stooping, or crouching, and no crawling, and no exposure to heights or dangerous moving machinery.

(*Id.*). Proceeding to step four, the ALJ found that Ubiles is unable to perform her past relevant work as a certified nursing assistant. (Tr. 22-23). At the fifth step, the ALJ considered Ubiles' age, education, work experience, RFC, and the testimony of a vocational expert to conclude that she can perform jobs that exist in significant numbers in the national economy, namely, information clerk, hotel desk clerk, and mail clerk. (Tr. 23-24). Accordingly, the ALJ found that Ubiles can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act from her alleged April 13, 2007 onset date through the date of the ALJ's decision. (Tr. 24).

IV.  *Ubiles' Challenges*

Ubiles challenges the Commissioner's disability decision on two grounds: (1) the ALJ violated the "treating physician rule" by failing to properly consider the opinion of her treating physician, Dr. Matteliano; and (2) the ALJ failed to properly consider her use of a cane. The Court will address each argument in turn.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§404.1567(b), 416.967(b).

A. *Dr. Matteliano's Opinion*

Ubiles argues that the ALJ violated the "treating physician rule" by misstating the opinion of Dr. Matteliano, who regularly treated her for over four years. Between March 2009 and November 2011, Dr. Matteliano opined that Ubiles has a "moderate to marked partial permanent disability." However, based on the results of the electrodiagnostic study conducted in December 2011, Dr. Matteliano changed his opinion to "total temporary disability" and maintained this assessment through December 2013. In concluding that Ubiles retains the RFC to perform a range of light work, the ALJ overlooked that Dr. Matteliano had changed his opinion and incorrectly stated that Dr. Matteliano had assessed a partial permanent disability all the way through 2013. (Tr. 21-22).

The treating physician rule requires an ALJ to give controlling weight to a treating source's opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the ALJ elects not to give a treating source's opinion controlling weight, he must consider certain factors to determine the weight to give the opinion, *id.* §§404.1527(c)(2), 416.927(c)(2), and "comprehensively set forth [his] reasons for the weight assigned to [the] opinion," *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (first alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The regulations state that the Commissioner "will always give good reasons" for the weight assigned to a treating source's medical opinion. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." *Miller v. Colvin*, 122 F. Supp. 3d 23, 28 (W.D.N.Y. 2015) (internal quotation

marks and citations omitted). The ALJ's failure to provide good reasons for the weight he assigns to a treating source's opinion ordinarily requires remand. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion . . . ."). The ALJ should explain why he is not crediting a treating physician's opinion even where, as here, the opinion addresses an issue reserved to the Commissioner, namely, whether or not the claimant is disabled. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited.").

Here, although the ALJ discussed the results of the December 5, 2011 electrodiagnostic study, he overlooked that Dr. Matteliano revised his opinion to total temporary disability based on the results of the study.[5] By overlooking Dr. Matteliano's revised opinion, the ALJ did not have the opportunity to discuss what weight, if any, the opinion is entitled to under the treating physician rule. Accordingly, this matter should be remanded for proper application of the treating physician rule to Dr. Matteliano's opinion. However, because Dr. Matteliano's opinion that Ubiles has a total temporary disability addresses an issue reserved to the Commissioner, on remand the ALJ should request a medical source statement from Dr. Matteliano regarding Ubiles' physical capabilities.

---

[5] The Court notes that Ubiles no longer challenges the ALJ's disability determination as it relates to the period prior to the December 5, 2011 electrodiagnostic study. (*See* Dkt. No. 29 at 7 ("In asking the Court to grant benefits as of December 5, 2011 based on the EMG test and opinion of Dr. Matteliano, Plaintiff is effectively conceding the prior periods and amending the alleged onset date.")).

B. *Use of a Cane*

Ubiles argues that the ALJ erred by failing to properly consider her need for a cane. At a March 8, 2012 appointment, Dr. Matteliano noted that Ubiles uses an assistive device for ambulation, and at a July 2, 2012 appointment, he commented that Ubiles uses a cane for both ambulation and stability. Further, at appointments in August 2012, January 2013, and March 2013, Dr. Matteliano directed Ubiles to use a cane for ambulation.[6] The ALJ noted in his decision that Ubiles uses a cane (Tr. 21), but he failed to state whether or not the cane is medically necessary and how the cane might impact Ubiles' ability to perform a range of light work and adjust to other work. *See Wright v. Colvin*, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

Social Security Ruling ("SSR") 96-9p provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." The requirements of SSR 96-9p are met here because Dr. Matteliano directed Ubiles to use her cane when walking and noted that she needs the cane for stability. *See Zidanich v. Colvin*, No. 16-CV-87-FPG, 2016 WL 6275233, at *3-5 (W.D.N.Y. Oct. 27, 2016) (applying

---

[6] Ubiles stated in a questionnaire and at the ALJ hearing that the cane was prescribed to her (Tr. 55, 165-66), but she stated in an interview that the cane was self-prescribed (Tr. 169). The Court finds this discrepancy to be irrelevant because Dr. Matteliano's treatment notes indicate that he directed Ubiles to use the cane.

SSR 96-9p to plaintiff's use of a cane).  Contrary to the Commissioner's argument (Dkt. No. 27-1 at 23), Ubiles' need for a cane does not appear to have been "brief and intermittent," as she had an antalgic gate throughout 2012 and 2013 and Dr. Matteliano directed her to use a cane on three separate occasions.  Therefore, the ALJ should have accounted for Ubiles' use of a cane in making his RFC assessment, and his failure to do so compels the Court to conclude that his RFC assessment is not supported by substantial evidence.  *See Zidanich*, 2016 WL 6275233, at *3-5; *Wright*, 2015 WL 4600287, at *5-6.  This case should therefore be remanded to allow the ALJ to properly consider Ubiles' need for a cane.

## **CONCLUSION**

For the foregoing reasons, it is recommended that Ubiles' motion for judgment on the pleadings (Dkt. No. 18) be granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 27) be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Arcara.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE***

**RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

Dated: September 28, 2017
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge